THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GARELABI ABUSIKIN,

                Plaintiff,

                v.

THE CITY OF NEW YORK, POLICE OFFICER
MIRJAN LOLJA and JOHN DOES 1-2

                Defendants.
------------------------------------------------------------x

Civil Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1. This is an action brought by Plaintiff GARELABI ABUSIKIN to recover damages for false arrest and imprisonment, malicious prosecution, assault, battery, and trespass against The CITY OF NEW YORK ("The City"), Police Officer MIRJAN LOLJA and JOHN DOES 1-2 in violation of his rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, Article 1, Section 12 of the New York Constitution and Common Law.

2. Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems fit and proper.

## JURISDICTION AND VENUE

3. This is an action brought pursuant to 42 U.S.C. section 1983, the Fourth, and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. sections 1331 and 1343. This Court

has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. section 1367.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391 (b) and (c) because the incident giving rise to these causes of action occurred at Manhattan, New York, which is within the Southern District.

## PARTIES

6. At all times necessary and material to this action, Plaintiff Garelabi Abusikin was and is still a resident of the State of Pennsylvania, within the United States of America.

7. At all times necessary and material to this case, Defendant, The City was and is still a municipal corporation organized under the laws of the State of New York.

8. At all times necessary and material to this action, Police Officer MIRJAN LOLJA was an employee of the City of New York working for the New York Police Department and was acting under the color of State Law, in his official capacity and within the scope of his employment when the unlawful acts described herein occurred.

9. At all times necessary and material to this action, Defendant Police Officers, John Does 1-2 were employees of the New York Police Department who were acting under the color of State Law, in their respective official capacities and within the scope of their respective employment when the unlawful acts described herein occurred.

## FACTUAL ALLEGATIONS

10. On or around December 11, 2016, at approximately 5: 30 p.m., in front to East 76th and 116th Street, Plaintiff found a legal parking spot and parked his car. After Plaintiff parked his car, an older white woman came to the window and knocked three times.

11. Plaintiff asked what was wrong and she stated that the spot was the spot that her husband told her to stay in. Plaintiff advised the woman that if she was not in-between the two cars and was far away from the parking spot, there was no way for him to know that.

12. Plaintiff then asked her where her husband was and she told him that he was around the block, that he went around the block and was coming back because he did not want to block the street.

13. Plaintiff told the woman that there was an empty parking spot with no one in it, that Plaintiff had parked, that her husband was not there and that his car was nowhere near there, that he had already parked and he was sorry and was going across the street to eat.

14. On his way to the restaurant, the woman's husband arrived. They told Plaintiff to move his car or they would call their son who is a police officer to come and move it. Plaintiff told them that if Plaintiff did anything wrong, they should call their son.

15. Plaintiff went to the restaurant and after about ten minutes the police arrived - two Police Officers, one was a short white man whose ethnic background Plaintiff does not know, and the other a tall Russian man. The couple who told Plaintiff that they would call their son are Russian.

16. When Plaintiff saw the Police car come to the scene, Plaintiff came out from the restaurant. The Russian Police Officer whom Plaintiff later understood to be Mirjan Lolja told Plaintiff to move his car from the spot while talking to the couple in the Russian language.

3

17. Plaintiff responded: # 1, speak English, # 2, what is the reason why I have to move my car?" Officer Lolja shouted at Plaintiff: "Stop talking and move your car!" Plaintiff told the Officer that before he would move his car, the Officer had to tell Plaintiff the reason because where Plaintiff parked was a legal parking spot.

18. Plaintiff also asked if the couple was his family and he told Plaintiff that that was not his business. He told Plaintiff that if Plaintiff did not move his car, he would take Plaintiff to jail. Plaintiff asked whether he was a real police officer or whether it was a joke because it was not what the law says in America. The Russian Police Officer roughly held Plaintiff by his neck and violently pushed Plaintiff against his car and handcuffed him.

19. The couple and Police Officer Lolja started talking and Plaintiff heard the couple say: "Good job!" "Good job!" to the Officer. The Officer cursed Plaintiff, "mother fucker", took Plaintiff's wallet and keys from his pocket and then pushed Plaintiff very hard into the police car.

20. Officer Lolja opened Plaintiff's car, turned it and on moved it from the legal parking spot to a hydrant with a "No Parking" sign.

21. After moving Plaintiff's car without his consent and against his will, Officer Lolja told the couple to park their car and they parked their car in the spot where Plaintiff had previously parked his car. Both Police Officers came into the Police car where Plaintiff was with the short officer in driver's seat and the other in the passenger's seat.

22. Officer Lolja pushed Plaintiff again when they came into the police car and said: "You know what mother fucker, you know what I am going to do to you now?' Plaintiff said that he did not know, and they drove the police car from 116th to 117th street and they stopped at 117th. The first thing they said to Plaintiff was: "If you want to be a gentleman and go home, we are

not going to give you any ticket. You are not going to ask for our badge numbers or what Precinct we work in, you are just going to leave or if you do not agree, I will take you to jail."

23. Plaintiff responded that he wanted to go home, wanted to continue working, that he was a student in Philadelphia and was just there during the weekends to make money, but that he needed to know the Officer's badge number and the Precinct they were assigned to in order to know whether they were in fact police officers or not as what they were doing was not legal.

24. Officer Lolja said: "Fuck No! Deal or No Deal!". The other Officer told Officer Lolja more than three times: "Let him go, let him go, we do not need any trouble with this type of stuff, just give him any ticket, a parking ticket and let him go!". Officer Lolja asked him if he knew the type of ticket to give to Plaintiff, he responded that he did not know, but that he (Lolja) should give Plaintiff any ticket, parking, violation, anything to let him go.

25. When Plaintiff did not agree to go without getting their information, they took Plaintiff to the Police Station. Officer Lolja told the Desk Sergeant that Plaintiff was blocking the street and when he told Plaintiff to move his car, Plaintiff did not want to move his car. They put Plaintiff in a cell by himself. The Supervisor (Desk Sergeant) came and talked to Plaintiff. He told Plaintiff to be a gentleman, that he would come back to talk to him again. The Supervisor called Officer Lolja and he came in front of the cell and Plaintiff heard everything that they said.

26. The Supervisor asked Officer Lolja: "Why did you bring him here? Why did you bring him here?" The Officer kept repeating whatever he said before and the supervisor stated that he did not see any reason Plaintiff should be there. "Just let him go!" Officer Lolja asked, "If I

let him go, is he not going to sue me?" The Supervisor said that he did not know, but that Plaintiff should not be there.

27. After the supervisor and the Officer left, later, Officer Lolja came and asked Plaintiff how old he was, told him that it was a weekend and he would keep the Plaintiff until Monday before Plaintiff could see a judge.

28. He then asked: "It is what you want, right?" He kept repeating the question, Plaintiff kept on saying that that was not what he wanted. Officer Lolja kept saying that if Plaintiff was not going to sue him, he would let Plaintiff go, but that if Plaintiff would not make that promise he would not let Plaintiff go.

29. Plaintiff told Officer Lolja to let him go because he did not do anything wrong, but that he (Plaintiff) was still going to sue him. The Officer responded: "No!" It was either Plaintiff agreed not to sue him or he would keep him there all night and the following day and night.

30. The Officer and his friend then put Plaintiff in a car from 116th to Downtown around 1 Center Street. They put Plaintiff inside the jail laughing and said: "Have a good night, we would see you two days from now."

31. Plaintiff stayed with twenty-five people (25) in the same cell in horrendous conditions all night and the 2nd day. When Plaintiff saw a Judge on the 3rd day, the Judge released him. When Plaintiff saw the Judge for first time, he was offered ACD and Plaintiff refused same and told the Judge that if they had proof to bring it and if not, to dismiss the case. The Judge adjourned the case so that the police will come and testify but they failed to show up.

32. After the Police did not show up the prosecutor offered ACD and Plaintiff refused. The Judge said that he would like the Plaintiff to come in for the last time in two weeks. Plaintiff showed the Judge his travel documents and told the Judge that he had to travel to Africa

because his mother was sick and that he needed to go and tend to her and find appropriate care for her. The Judge told Plaintiff that because he had the case in Court, he could not travel. Because Plaintiff had a case and a Court date, Plaintiff could not travel and his mother died without him being able to see her or help her.

33. When Plaintiff came the last time before the case was dismissed, the Judge stated that he was waiting for the police to come and testify and that Plaintiff had to wait. Plaintiff waited from 9:30 a.m. to 3 p.m. Plaintiff was sent to another Judge after that from Court C to M. The Judge told Plaintiff that Plaintiff had to come again the next time.

34. Plaintiff's lawyer explained that Plaintiff had come from Philadelphia four times to testify and there is no evidence, no prior history, never been in jail, a student and has a family. The Judge asked why he came four times and the lawyer explained to the new Judge what happened all the time. The Judge asked the Prosecutor where the Police was, he said that he did not know, he asked him whether he had any evidence and he said no. The judge then said that there is no case here, case is dismissed. The case was dismissed on March 6, 2017.

35. Plaintiff has never been in jail, served in the United States Army defending the Country, never thought that this is possible in the United States and now feels that he can be taken by the police and accused of anything and they could make it stick even when he has not done anything wrong.

36. Plaintiff did not know that something like this is possible in the United States and in New York City of all places. Plaintiff was emotionally traumatized and is still traumatized as a result.

37. Plaintiff was deprived of his liberty, assaulted, battered, suffered emotional distress, mental anguish, pain, fear, anxiety, embarrassment, humiliation, and loss of income.

38. Plaintiff sustained special damages in the sum of approximately $ 600.00 for two tickets he got as a result of Defendants parking his car at a hydrant and taking him to jail. Plaintiff has not been able to pay the tickets and they are in judgement. Plaintiff was making between $ 2,500.00 to $ 3,000.00 each week working long hours every weekend as a yellow cab driver in New York City while going to school and raising his family in Philadelphia but as a result of this arrest he lost his TLC license. The damages are continuing weekly and although Plaintiff recently obtained an alternative job as an Uber driver, the compensation from that job is very small (approximately $500-600 a week) compared to what Plaintiff made as Yellow Cab driver.

39. As a direct result and proximate consequence of Defendants' actions, Plaintiff was deprived of his liberty, assaulted, and battered; suffered emotional distress, mental anguish, pain, fear, anxiety, embarrassment, humiliation, and loss of income and will continue to suffer these same injuries into the foreseeable future.

40. Defendants John Does Nos 1 - 2 (Police Officer Lolja's Partner and driver of the vehicle who accompanied Lolja to the location where Plaintiff's car was parked and The Desk Sergeant) failed in their duty to intervene to stop Officer Lolja from violating Plaintiff's clearly established constitutional and legal rights to be free from false arrest and malicious prosecution and are therefore jointly and severally liable for the violation of Plaintiff's constitutional and common law rights.

41. Although the Desk Sergeant and Officer Lolja's partner knew that what Officer Lolja was doing was a clear violation of the law and on several occasions each tried to talk Officer Lolja out of his illegal and unconstitutional actions, by not actively stopping him, or, taking other active measures to stop the violation of Plaintiff's rights, they failed in their duty to

actively intervene to prevent the violation of Plaintiff's constitutional rights by a fellow officer and they thereby condoned, acquiesced and became active participants in Officer Lolja's violation of Plaintiff's constitutional rights and are therefore jointly and severally liable to Plaintiff for all damages he sustained as a result of Officer Lolja's actions.

42. Plaintiff filed a Notice of Claim with the Comptroller of the City of New York within 90 days of the happening of the events described herein, and attended his 50 H hearing and this action is filed within a year and ninety days from the relevant accrual period.

## AS FOR THE FIRST CAUSE OF ACTION

43. Plaintiff repeats and re-alleges paragraphs 1 through 42 as if each paragraph is repeated and re-alleged herein verbatim.

44. In violation of Plaintiff's rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, Article 1, section 12 of the New York Constitution, and 42 U.S.C. Section 1983, to be free from unreasonable search and seizure, Officer Lolja being a person with authority and acting under the color of law falsely arrested and imprisoned the Plaintiff. Defendant Lolja intended to confine the Plaintiff, Plaintiff was conscious of the confinement and did not consent to it, and the confinement was not privileged. Defendant Lolja unlawfully arrested and imprisoned the Plaintiff when he roughly held Plaintiff by his neck and violently pushed him against his car and handcuffed him. The Defendant arrested the Plaintiff without a warrant of arrest, or reasonable cause to believe that Plaintiff had committed a crime.

45. As a direct and proximate consequence of Defendant Officer Lolja's actions, Plaintiff suffered physical pain, emotional, psychological and economic injuries for which Defendant

Lolja is liable to Plaintiff for.

## AS FOR THE SECOND CAUSE OF ACTION

46. Plaintiff repeats and re-alleges paragraphs 1 through 45 of the Complaint as if each paragraph is repeated and re-alleged herein verbatim.

47. Defendants John Does No. 1 - 2 (Officer Lolja's Partner and The Desk Sergeant) failed to intervene to prevent the false arrest of Plaintiff when they understood and knew the circumstances of Plaintiff's illegal arrest and failed to actively intervene to stop such arrest and are therefore jointly and severally liable with Officer Lolja for the violation of Plaintiff's constitutional right not to be subjected to arrest without probable cause in violation of his 4th and 14th Amendment constitutional rights and 42 U.S.C. section 1983.

48. As a direct and proximate cause of Defendants' failure to intervene, Plaintiff suffered physical pain, emotional and mental injuries and incurred economic damages for which Defendants are therefore jointly and severally liable to the Plaintiff for the said damages.

## AS FOR THE THIRD CAUSE OF ACTION

49. Plaintiff repeats and re-alleges paragraphs 1 through 48 of the Complaint as if each paragraph is repeated and re-alleged herein verbatim.

50. In violation of Plaintiff's right under the common law, Defendant POLICE OFFICER MIRJAN LOLJA, without probable cause or reasonable grounds improperly and out of malice initiated a criminal action against the Plaintiff and maliciously prosecuted him. Defendant played an active role in the case by initiating this action, Defendant Police Officer Lolja was well aware that the Plaintiff had not committed any crime, and had no reasonably

trustworthy information that would have led him to such a belief.

51. Defendant Police Officer Lolja arrested the Plaintiff in order to impress his parents, and in order to justify his unlawful act, offered Plaintiff a deal not to sue him otherwise he will be thrown in jail. Plaintiff was jailed when he refused to accept the deal not to sue. The case was dismissed on March 6, 2017 in the favor of the Plaintiff because the police did not show up and the prosecutor said that he had no evidence to support the case after Plaintiff had gone to Court on numerous occasions and Plaintiff missed going to attend to his sick mother who ended up dying and was buried without Plaintiff being able to see her, attend to her, help her, or even be present during burial.

52. As a result of the malicious prosecution, Plaintiff could not travel to Africa to visit his mother who was really sick even though he had his visa and his passport to do so. Plaintiff's mother died two months afterwards.

53. As a direct and proximate consequence of Defendants' actions, Plaintiff suffered emotional, psychological and economic injuries. Plaintiff is grieved and continues to grieve the fact that he did not see his mother or help with her care and treatment before she died and was not able to attend or be present during her burial. Plaintiff also lost his TLC license as a result of the false arrest and malicious prosecution. Defendant Lolja is therefore liable to the Plaintiff for all injuries sustained as a result of his malicious prosecution of the Plaintiff.

## AS FOR THE FOURTH CAUSE OF ACTION

54. In violation of Plaintiff's right under the 4th and 14th Amendments not to be prosecuted without probable cause, Defendant POLICE OFFICER MIRJAN LOLJA without probable cause or reasonable grounds improperly and out of malice initiated a criminal action against

the Plaintiff and maliciously prosecuted him. Defendant played an active role in the case by initiating this action, Defendant Police Officer Lolja was well aware that the Plaintiff had not committed any crime, and had no reasonably trustworthy information that would lead him to such a belief.

55. Defendant Police Officer Lolja arrested the Plaintiff in order to impress his parents, and in order to justify his unlawful act, offered Plaintiff a deal not to sue him otherwise he would be thrown into jail. Plaintiff was jailed when he refused to accept the deal not to sue. The case was dismissed on March 6, 2017 in the favor of the Plaintiff because the police did not show up and the prosecutor said that he had no evidence to support the case after Plaintiff had gone to Court on many occasions and Plaintiff missed going to attend and provide care to his sick mother who ended up dying and being buried without Plaintiff being able to see her, attend to her or help her.

56. As a result of the malicious prosecution, Plaintiff could not travel to Africa to visit his mother who was really sick even though he had his visa and his passport to do so. Plaintiff's mother died two months afterwards and Plaintiff could not even attend her burial.

57. As a direct and proximate consequence of Defendants' actions, Plaintiff suffered emotional, psychological and economic injuries. Plaintiff is grieved and continues to grieve the fact that he did not see his mother before she died and could not even attend her burial. Plaintiff also lost his TLC license as a result of the false arrest and malicious prosecution. Defendant Lolja is therefore liable to the Plaintiff for all injuries sustained as a result of his malicious prosecution of the Plaintiff.

## AS FOR FIFTH CAUSE OF ACTION

58. Plaintiff repeats and re-alleges paragraphs 1 through 57 of the Complaint as if each paragraph is repeated herein verbatim.

59. John Does Defendants Nos. 1-2 failed to actively intervene to stop Officer Lolja from maliciously prosecuting Plaintiff. As a result of their failure to intervene, Plaintiff had to appear in Court on many occasions, lost his TLC license, lost his job working as a NYC Yellow cab driver where he made approximately $2,500.00 to $3,000.00 each week, sustained other economic damages in the form of tickets given to him when his car was moved and parked by a hydrant, was unable to travel and see his mother to offer her succor in the time she needed Plaintiff the most and was humiliated, suffered emotionally and mentally and was otherwise damaged and Defendants John Does Nos. 1-2 are jointly liable to Plaintiff with Police Officer Lolja for the damages sustained by Plaintiff as a result of the malicious prosecution he was subjected to.

## AS FOR THE SIXTH CAUSE OF ACTION

60. Plaintiff repeats and re-alleges paragraphs 1 through 59 of this Complaint as if each paragraph is repeated and re-alleged herein verbatim.

61. The City of New York was the employer of the individual Defendants who were acting as its employees and agents in the course of their employment when they subjected Plaintiff to malicious prosecution and the City of New York is therefore liable to the Plaintiff for their actions under the *Respondeat Superior,* master/servant and/or agency rule for the damages sustained by Plaintiff as a result of the Defendants maliciously prosecuting Plaintiff.

**WHEREFORE,** Plaintiff prays the Court for judgement as follows:

**For each of the constitutional and statutory violations hereinabove complained of:**

i. general and compensatory damages in the amount to be proved at trial and in accordance with proof to adequately compensate Plaintiff GARELABI ABUSIKIN for the violation of his constitutional and statutory right for false imprisonment, malicious prosecution, pain, suffering and psychological injuries sustained against all Defendants, jointly and severally.

ii. Specific economic damages in the sum of approximately $ 600.00 for two tickets Plaintiff got as a result of Defendants parking his car at a hydrant and taking him to jail.

iii. Lost income in the amount of between $2,500.00 to $ 3,000.00 each week from the date of Plaintiff's arrest and continuing until he started driving for Uber, which was caused by his false arrest, imprisonment and malicious prosecution which caused the loss his TLC license; continuing and future economic damages in the amount of approximately $1,900.00 to $2,400.00 each week which Plaintiff is currently suffering and would continue to suffer from as a result of the loss of his TLC license.

iv. Punitive damages against Officer Lolja individually and in his individual capacity in the amount sufficient to punish him for such glaring and wanton abuse of power and to deter him and others like him from repeating such unlawful conduct.

v. Attorneys' fees and costs and disbursements of this action - against all the individual Defendants, jointly and severally and;

vi. Such other relief as the Court deems just and proper.

**For the common law claim of malicious prosecution hereinabove complained of:**

i. general and compensatory damages in the amount of $500,000.00 (five hundred thousand dollars) to adequately compensate Plaintiff GARELABI ABUSIKIN for the violation of his common law rights and pain, suffering and psychological injuries sustained against all Defendants, against all Defendants, jointly and severally.

ii. Specific economic damages in the sum of approximately $ 600.00 for two tickets Plaintiff got as a result of Defendants parking his car at a hydrant and taking him to jail, against Defendants, jointly and severally.

iii. Lost income in the amount of between $2,500.00 to $ 3,000.00 each week from the date of Plaintiff's arrest and continuing until he started driving for Uber, which was caused by his false arrest, imprisonment and malicious prosecution which caused the loss his TLC license; continuing and future economic damages in the amount of approximately $1,900.00 to $2,400.00 each week which Plaintiff is currently suffering and would continue to suffer from as a result of the loss of his TLC license, against Defendants, jointly and severally.

iv. Punitive damages against Officer Lolja individually and in his individual capacity in the amount sufficient to punish him for such glaring and wanton abuse of power and to deter him and others like him from repeating such unlawful conduct.

v. Costs and disbursements of this action - against all the Defendants, jointly and severally and;

vi. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
      May 23, 2018

                              OFODILE & ASSOCIATES
                              Attorneys for Plaintiff Garelabi Abusikin

                              By: _____
                              Anthony C. Ofodile, Esq.
                              498 Atlantic Avenue
                              Brooklyn, New York 11217
                              Tel: 718- 852- 8300
                              Fax: 718- 852- 7361
                              ACOfodile@aol.com

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x      Civil Case No.:
GARELABI ABUSIKIN,

        Plaintiff,
  v.

THE CITY OF NEW YORK, POLICE OFFICER
MIRJAN LOLJA and JOHN DOES 1-2

        Defendants.
-----------------------------------------------------------------x




x-----------------------------------------------------------------------------------------x
# **COMPLAINT**
x-----------------------------------------------------------------------------------------x

x.........................................................................................x

OFODILE & ASSOCIATES
Attorneys - At - Law
Attorneys for Plaintiff Geralabi Abusikin
498 Atlantic Avenue
Brooklyn, New York 11217
Phone Number: (718) 852-8300
Facsimile: (718) 852-7361
Email Address: ACOfodile@aol.com