UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARELABI ABUSIKIN,

                            Plaintiff,

               -against-

THE CITY OF NEW YORK, POLICE OFFICER
MIRJAN LOLJA, and JOHN DOES 1–2,

                            Defendants.

```
┌────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #: _____             │
│ DATE FILED: __3/11/2021__           │
└────────────────────────────────────┘
```

18 Civ. 4582 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

Plaintiff, Garelabi Abusikin, brings this action under 42 U.S.C. § 1983 and state law

against Defendants, the City of New York (the "City"), Police Officer Mirjan Lolja, and John

Does 1 and 2, alleging violations of his Fourth and Fourteenth Amendment rights.  Compl., ECF

No. 8.  Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

ECF No. 75.  For the reasons stated below, Defendants' motion is GRANTED in part and

DENIED in part.

**BACKGROUND**

Plaintiff and Defendants present vastly differing accounts of the events that occurred on

December 11, 2016.[1]  Plaintiff, a Black man born in Sudan, states that on that evening, he legally

parked his yellow taxi cab on East 116th Street in Manhattan.  Abusikin Dep. at 44:6–7,

---

[1] Defendants object to the bulk of Plaintiff's 56.1 Counterstatement as noncompliant with Local Civil Rule 56.1 for
failing to cite contravening evidence and asserting improper narrative, legal argument, and speculation.  Def. Reply
at 1–2, ECF No. 84.  Although the Court agrees that Plaintiff's 56.1 Counterstatement is not a model of specificity,
the Court nevertheless concludes that the majority of Plaintiff's denials direct the Court to evidence such that it is
"free[d]. . . from the need to hunt through voluminous records without guidance from the parties," and is, therefore,
acceptable.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  To the extent that the admissions "add[]
argumentative and often lengthy narrative . . . the object of which is to 'spin' the impact of the admissions plaintiff
has been compelled to make," those portions are struck from the statement.  *Goldstick v. The Hartford, Inc.*, No. 00
Civ. 8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002).

83:11–15, 98:3–7, 19–20, ECF No. 77-2.[2]  After he had parked but before he exited his vehicle, an older white woman approached his car window and informed him that he could not park there, because her husband, who was circling the block in his car, planned to take that spot.  *Id.* at 98:12–22, 101:6–8.  Plaintiff refused, then exited the cab, ignored the woman's continued insistence that he move his car, and entered a restaurant.  *Id.* at 102:6–11.  The woman's husband—and their vehicle—were not present during that exchange.  *Id.* at 103:19–21.

After approximately five minutes, Defendant Officer Mirjan Lolja and non-party Officer Anthony Ippolito entered the restaurant, and asked Plaintiff to come outside.  *Id.* at 105:2–8.  Plaintiff did so.  At that point, the tableau consisted of Plaintiff, with his cab parked legally, the woman and a white man Plaintiff believed to be her husband (together, the "Complainants"), with their car parked illegally in the street impeding traffic, and the police officers and their vehicle.  *Id.* at 106:21–107:10.  Lolja twice asked Plaintiff to move his car.  *Id.* at 112:1–9.  Plaintiff refused, instead inquiring what crime he had committed that required moving his car, and asking to speak to the officers' supervisor.  *Id.* at 112:15–17, 115:6–8.  Lolja then arrested Plaintiff for obstructing governmental administration, disruptive conduct, and harassment in the second degree, pushed Plaintiff against a car, and handcuffed him.  *Id.* at 115:17–19; Arrest Report, ECF No. 77-6.  Plaintiff did not resist the handcuffing.  Abusikin Dep. at 118:20–21.

Defendants disagree with Plaintiff's version of the events.  According to Defendants, Lolja and Ippolito were patrolling in a police vehicle on the evening of December 11, 2016.  56.1 Stmt. ¶¶ 1–2, ECF No. 76.  As they drove down East 116th Street, they observed a yellow taxi cab occupying two lanes of traffic and blocking westbound traffic.  *Id.* ¶¶ 8–9.  A man and

---

[2] Plaintiff's deposition is filed as two documents with continuing pagination, at ECF Nos. 77-2 (pages 1–100) and 77-3 (pages 101–267).  For ease of reference, the Court will refer to both documents as the Abusikin Deposition.

woman waved down the patrol car. *Id.* ¶ 11. The officers observed Plaintiff yelling at the Complainants. *Id.* ¶ 14. Plaintiff's cab was positioned so as to prevent the Complainants from parking their car. Lolja Dep. at 97:14–18, ECF No. 77-4. The Complainants informed the officers that Plaintiff was using his car to block theirs. 56.1 Stmt. ¶ 15. They told the officers Plaintiff was threatening them and they felt afraid. *Id.* ¶ 16.

Lolja asked Plaintiff to move his car multiple times, and Plaintiff refused. *Id.* ¶¶ 18–21. Plaintiff began "yelling and screaming," causing a crowd to form. *Id.* ¶¶ 22–23. Lolja then arrested Plaintiff for harassment, obstructing governmental administration, and disorderly conduct. *Id.* ¶ 24. Plaintiff physically attempted to avoid being handcuffed, so Lolja placed him against the car to handcuff him, with Ippolito assisting in the handcuffing. *Id.* ¶ 26–28.

The parties agree that after Plaintiff's arrest he was taken back to the 25th police precinct for processing. *Id.* ¶ 29; Pl. 56.1 Counterstmt. ¶ 29, ECF No. 83. Ultimately, Lolja signed a criminal complaint charging Plaintiff with disorderly conduct in violation of N.Y. Penal Law § 250.20(5), and he was arraigned on that charge. 56.1 Stmt. ¶ 36; Pl. 56.1 Counterstmt. ¶ 36. Plaintiff was later released on his own recognizance. 56.1 Stmt. ¶ 37; Pl. 56.1 Counterstmt. ¶ 37. During the course of the prosecution of his case, Plaintiff made multiple court appearances. Pl. 56.1 Counterstmt. ¶ 38. The parties disagree over whether Lolja testified. 56.1 Stmt. ¶ 39; Pl. 56.1 Counterstmt. ¶ 39; Abusikin Dep. at 161:22–24. On March 6, 2017, the matter was dismissed. 56.1 Stmt. ¶ 40; Certificate of Disposition, ECF No. 77-10.

On March 9, 2017, Plaintiff filed a notice of claim against the City. 56.1 Stmt. ¶ 41. Plaintiff first filed a complaint in this matter on May 23, 2018, but it was marked as deficient by the Clerk of Court. 5/23/2018 Docket Entry. Plaintiff re-filed his complaint on June 8, 2018, alleging claims against Defendants under 42 U.S.C. § 1983 for false arrest and imprisonment,

malicious prosecution, and excessive force, and under state law for false arrest and malicious prosecution.  Compl.

## DISCUSSION

Defendants move for summary judgment on all claims.  For the reasons stated below, this motion is GRANTED in part and DENIED in part.

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  In deciding the motion, the Court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

II.    Statute of Limitations

Plaintiff's state law false arrest claim is untimely.  Under the relevant statute of limitations, a plaintiff asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues.  N.Y. Gen. Mun. Law §§ 50-e; 50-i (2001).  An action is commenced by filing the complaint with the court.  *Sanchez v. Ehrlich*, No. 16 Civ. 8677, 2018 WL 2084147, at *4 (S.D.N.Y. Mar. 29, 2018).  The parties agree that Plaintiff's state false arrest claim must have been filed by March 11, 2018, and the state malicious prosecution claim by June 4, 2018.  Def. Mem. at 21, ECF No. 78; Pl. Opp'n at  13–14, ECF No. 82.

Plaintiff first filed his complaint on May 23, 2018.  5/23/2018 Docket Entry.  That filing was deemed deficient by the Clerk of Court for lack of a proper signature.  5/24/2018 Docket Entry.  Plaintiff filed a corrected complaint on June 8, 2018.  ECF No. 8.  Defendants argue that because Plaintiff did not file a properly signed complaint until June 8, 2018, the complaint was untimely as to both state law claims.  Def. Mem. at 21–22.

"A complaint is deemed filed when the Clerk of Court receives it."  *Kalican v. Dzurenda*, 583 F. App'x 21, 23 (2d Cir. 2014).  However, "'[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by [the Federal Rules of Civil Procedure] or by a local rule or practice.'"  *Id.* (quoting Fed. R. Civ. P. 5(d)(4)).  Accordingly, courts regularly deem timely complaints filed before the statute of limitations expires but rejected by the Clerk of Court due to a lack of proper signature, and then promptly refiled correctly.  *See, e.g.*, *Catozella v. PLS Rest. Inc.*, No. 18 Civ. 6660, 2019 WL 1897617, at *1 n.1 (S.D.N.Y. Apr. 26, 2019); *Johnson v. Colvin*, No. 15 Civ. 3853, 2015 WL 7078648, at *1 (S.D.N.Y. Nov. 13, 2015).  Plaintiff refiled

the complaint approximately two weeks after being notified of its deficiency, which other courts have considered prompt correction. *Rodriguez v. City of New York*, No. 10 Civ. 1849, 2011 WL 4344057, at *2–3 (S.D.N.Y. Sept. 7, 2011) (concluding a complaint was promptly corrected that was originally filed on February 16, 2010, and corrected on March 9, 2010). Therefore, despite the infirmity in the original complaint, for purposes of the statute of limitations, the Court considers the complaint to have been filed on May 23, 2018, before the June 4, 2018 deadline for the filing of the malicious prosecution claim.

May 23, 2018, is, however, after the March 11, 2018 deadline for the statute of limitations for the state false arrest claim. Plaintiff implicitly concedes this point by asserting only that his state law claim for malicious prosecution was timely. Pl. Opp'n at 13. Therefore, the state false arrest claim is time-barred.

Accordingly, Defendants' motion for summary judgement is GRANTED as to the state false arrest claim.

III.   <u>False Arrest</u>

Plaintiff has alleged that he was falsely arrested in violation of his constitutional rights under § 1983. "To establish the requisite elements of a false arrest, a plaintiff must show that: (1) the defendants intended to confine [him]; (2) [he] was conscious of [his] confinement; (3) [he] did not consent to be confined; and (4) the confinement was not otherwise privileged." *Pace v. Town of Southampton*, 678 F. Supp. 2d 79, 84 (E.D.N.Y. 2010) (citations omitted). The fourth element cannot be established where the arrest is based on probable cause. *Id*.; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause . . . is a complete defense to an action for false arrest" (citation and internal quotation marks omitted)).

The only element presently in dispute is the fourth.  Thus, "[t]he Court's task, at this stage, is to determine if there are triable issues of fact concerning whether [Lolja] lacked probable cause to arrest [Plaintiff]."  *Pace*, 678 F. Supp. 2d at 85; *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("[W]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury.").

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant*, 101 F.3d at 852.  Defendants argue that Lolja had probable cause to arrest Plaintiff under N.Y. Penal Law §§ 240.20, 195.05, 240.15, and 120.26.  Def. Mem. at 7. Probable cause need only exist under one of the statutes to create a defense to the false arrest claim.  *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

A.    Disorderly Conduct

Defendants contend that Lolja had probable cause to arrest Plaintiff under N.Y. Penal Law § 240.20(1), for "engag[ing] in fighting or in violent, tumultuous or threatening behavior," § 240.20(2), for "mak[ing] unreasonable noise," or § 240.20(5), for "obstruct[ing] vehicular or pedestrian traffic."  N.Y. Penal Law § 240.20; Def. Mem. at 7.  Defendants base this claim on their assertion that Plaintiff's cab was blocking traffic, and Plaintiff refused to move the vehicle after being instructed to do so multiple times.  56.1 Stmt. ¶¶ 20–23.

The facts underlying probable cause based on those statutes are, however, in stark dispute.  To establish probable cause under § 240.20(5), the Second Circuit has required  "a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question." *Holmes v. City of New York*, No. 14 Civ. 5253, 2016 WL 915332, at *3 (S.D.N.Y. Mar. 4, 2016) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 372 (2d Cir. 2007)). Defendants claim that Plaintiff's taxi was impeding westbound traffic on 116th Street, 56.1 Stmt. ¶¶ 9–10, and Plaintiff claims that he was legally parked, Pl. 56.1 Counterstmt. ¶¶ 9–10; Abusikin Dep. at 98:3–7.  If a jury were to credit Plaintiff, traffic would not have been blocked, and, therefore, there would be no probable cause for Plaintiff's arrest under § 240.20(5).

Moreover, Plaintiff contests Defendants' claim that Plaintiff "began yelling and screaming" in response to Lolja's instructions to move his car.  Pl. 56.1 Counterstmt. ¶ 22, Abusikin Dep. at 115:3–19.  Again, if a jury were to credit Plaintiff's account, there would be no behavior or noise to underlie an arrest under §§ 240.20(1) or (2).  Because these material facts are in dispute, the Court cannot as a matter of law find probable cause for an arrest for disorderly conduct.

### B.      Obstructing Governmental Administration

Defendants also argue that there was probable cause to arrest Plaintiff for obstructing governmental administration in violation of N.Y. Penal Law § 195.05.  Def. Mem. at 7.  The elements of this crime are that: "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of the official function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017).  The interference must be through one of three methods: "(1) intimidation, (2) physical force or interference, or (3) any independently unlawful act." *Uzoukwu v. City of*

8

*New York*, 805 F.3d 409, 414 (2d Cir. 2015) (quoting *People v. Case*, 365 N.E.2d 872 (N.Y. 1977)).  If the second method is invoked, the interference must have a "physical" aspect and cannot "consist solely of verbal statements," though "an officer may consider both words and deeds in determining whether the individual's conduct is sufficiently obstructive to justify an arrest."  *Kass*, 864 F.3d at 209.  The "insufficiency of verbal interference to give rise to probable cause to arrest for obstruction of governmental administration is particularly apparent where . . . the individual has not become aggressive or disorderly."  *McKnight v. Vasile*, No. 11 Civ. 6328P, 2017 WL 1176051, at *18 (W.D.N.Y. Mar. 30, 2017).

For instance, merely refusing to respond to an officer's questions does not satisfy this requirement.  *Uzoukwu*, 805 F.3d at 415; *see also Holmes v. City of New York*, No. 14 Civ. 5253, 2016 WL 915332, at *1, 4 (S.D.N.Y. Mar. 4, 2016) (finding no obstruction where the plaintiff did not comply with police instructions to move from a roadway and continued filming an arrest).  Moreover, "[f]ailing to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration."  *Dowling v. City of New York*, No. 11 Civ. 4954, 2013 WL 5502867, at *4 (E.D.N.Y. Sept. 30, 2013).  Failure to obey an order in a way that "creates some other hazard or interference," however, can create probable cause.  *Id.*

Defendants argue that there was probable cause for Plaintiff's arrest because he refused to move his vehicle multiple times, disobeying Lolja's orders.  Def. Mem. at 8.  That refusal only rises to obstruction of governmental administration if it was more than mere verbal interference, or created additional hazards.  *Dowling*, 2013 WL 5502867, at *4.  Both of these issues are in dispute.  Defendants claim that Plaintiff yelled and argued, caused a crowd to gather around him, and refused to move his car, preventing Lolja and Ippolito from doing their jobs and creating an

ongoing hazard.  56.1 Stmt. ¶¶ 22–23; Def. Mem. at 8.  Plaintiff states that he merely verbally

asked Lolja what crime he had committed, and to speak to a supervisor.  Pl. 56.1 Counterstmt.

¶¶ 21–22; Abusikin Dep. at 115:3–19.  Plaintiff further states that his car was not blocking

traffic.  Pl. 56.1 Countersmt. ¶ 18; Abusikin Dep. at 98:6–7.  Moreover, although Plaintiff

admitted that some individuals began to film the encounter, and others were remarking on it,

there is no indication that these individuals impeded the police officers from conducting the

arrest.  Abusikin Dep. at 127:15–22, 131:18–132:12.  Because there are triable issues of fact, the

Court cannot determine whether there was probable cause for arrest under § 195.05.

C.     Menacing

Third, Defendants argue that Lolja had probable cause to arrest Plaintiff for menacing in

the third degree under N.Y. Penal Law § 120.15.  Def. Mem. at 7.  Menacing has two elements:

(i) physical menace and (ii) fear of imminent harm.  *Ackerson v. City of White Plains*, 702 F.3d

15, 20 (2d Cir. 2012), *as amended* (Dec. 4, 2012).  Therefore, "[o]ral statements alone do not

constitute a physical menace and must be accompanied by a physical action beyond approaching

someone to talk with them."  *Id.* (holding there was no probable cause for menacing where an

individual approached a woman, came within a few feet of her, and asked her questions, where

"the accusatory instrument did not contain any accusations amounting to a physical menace"

(emphasis omitted)).

The menacing charge is not based on Defendants' observations.  Rather, it is grounded in

the statements of the Complainants, who told Lolja and Ippolito that "[P]laintiff was threatening

them and that she was afraid."  56.1 Stmt. ¶ 16.  Ippolito observed that the woman stated that

"[Plaintiff] was very aggressive.  In the way he approached them he was throwing his hands in

the air and yelling."  Ippolito Dep. at 36:24–37:3, ECF No. 77-5.  Plaintiff admits he did not hear

what the Complainants said to the officers, and that he cannot, therefore, challenge the content of their statements.  Pl. 56.1 Counterstmt. ¶ 12.[3]

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  In *Singer*, the Second Circuit articulated two important caveats: this reliance is particularly appropriate where the complainant has signed a complaint or information, and there must be no circumstances that raise doubts as to the victim's veracity.

The signature caveat is important because a signature on an accusatory instrument means that the facts, "if fabricated[,] would subject [the complainant] to criminal liability" and therefore "rigorous scrutiny of the basis of [the complainant's] knowledge [is] unnecessary."  *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 234 (1983)); *see also Stansbury v. Wertman*, 721 F.3d 84, 90–91 (2d Cir. 2013); *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997).

The second caveat—the existence of circumstances that raise doubts as to a complainant's veracity—is important because "[s]ome people have axes to grind," and so are not strictly truthful.  *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).  Courts, therefore, have found reliance on a victim's statements made in the heat of the moment reasonable where outside evidence supported the truth of the victim's accusation; for instance,

---

[3] Contrary to Plaintiff's contentions, Pl. Opp'n at 12–13, the Complainants' statements are not inadmissible hearsay. The Court is not relying on them for the truth of the Complainants' assertions—whether Plaintiff actually yelled and threatened the Complainants—but rather for the effect the words had on the officers in determining whether they were entitled to rely on the Complainants' report of the events to establish probable cause. *Williams v. City of New York*, No. 10 Civ. 2676, 2012 WL 511533, at *3 n.2 (E.D.N.Y. Feb. 15, 2012).

where an individual was accused of assault, the victim was visibly injured, and the individual did not deny injuring the victim, but argued that it was in self-defense. *Ziming Shen v. City of New York*, 725 F. App'x 7, 13 (2d Cir. 2018), *cert. denied sub nom. Ziming Shen v. City of New York*, 139 S. Ct. 78 (2018).  Where there are circumstances that raise doubts as to the victim's veracity, however, the officer is not entitled to rely on the statements.  *Weaver v. City of New York*, No. 13 Civ. 20, 2014 WL 950041, at *5 (E.D.N.Y. Mar. 11, 2014).

There is a question of fact as to whether the Complainants' statements, if true, gave rise to probable cause for menacing.  Merely yelling at an individual, without an overt physical threatening act, does not support a charge of menacing, even if it creates a sense of fear.  *People v. Sylla*, 792 N.Y.S.2d 764, 765 (N.Y. App. Div. 2005) (finding no menacing where "defendant stood outside of complainant's home, confronted her and yelled, cursed and threatened complainant.").  Even under Defendants' account, at no point did the Complainants state that there was a physical threatening act outside of Plaintiff waving his hands, even if they felt threatened by Plaintiff's words.  *Cf. Santagata v. Diaz*, No. 17 Civ. 3053, 2020 WL 1536347, at *5 (E.D.N.Y. Mar. 30, 2020) (finding menacing where an individual advanced on the complainant with a knife and threatened to stab him).  A reasonable jury could find that the Complainants' statements to the officers were insufficient to justify a finding of probable cause.

Moreover, there are facts in dispute which, if resolved in Plaintiff's favor, would pose the question of whether there were circumstances that would raise doubts as to the Complainants' veracity and Lolja's reasonableness in relying on the Complainant's statements.  For instance, the Complainants did not sign an accusatory instrument that would have subjected them to criminal liability for perjury; in fact, Lolja was told they cannot be located.  56.1 Stmt. ¶ 35; Lolja Dep. at 120:2–6.

12

And there are factual disputes regarding the circumstances around the Complainants' statements.  If Plaintiff's account is accepted, the officers would have encountered the Complainants on the street, with Plaintiff's car legally parked, Plaintiff not present, and the Complainants' car impeding traffic, and been faced with the Complainants' statements that they had been in the process of parking when Plaintiff blocked them with his car, emerged from his car, started yelling that they could not park there, and then left the scene.  Abusikin Dep. at 106:22–107:10; Lolja Dep. at 58:9–17.  In those circumstances—the Complainants claiming that Plaintiff had blocked them from finishing parking and had threatened them to prevent their parking in what was then an empty spot, despite *Plaintiff's* car being legally parked in the spot at issue and the Complainants' car blocking traffic—without other indicia of the truth of the Complainants' veracity, the Court cannot say reliance on the Complainants' statements would have been reasonable as a matter of law.

Given the factual questions surrounding both whether the Complainants' statements would give rise to probable cause for menacing, and if it was reasonable for Lolja to rely on them, the Court cannot conclude that there was probable cause to arrest Plaintiff for menacing.

D.    Harassment

Finally, Defendants argue that there was probable cause to arrest Plaintiff for harassment in the second degree under N.Y. Penal Law § 240.26.  Def. Mem. at 7.  An individual commits harassment in the second degree when, "with intent to harass, annoy or alarm another person . . . [he] strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . ."  N.Y. Penal Law § 240.26.  Like with menacing, there is a "physical contact element" to harassment.  *People v. Canjura*, 2 N.Y.S.3d 724, 727 (N.Y. App. Div. 2014).  For harassment to be charged, there must be "genuine threats."  *Rafael F. v.*

13

*Pedro Pablo N.*, 965 N.Y.S.2d 718, 719 (N.Y. App. Div. 2013) (holding there was no

harassment based on only isolated incidents of threats in the course of an ongoing dispute); *see*

*also Teanna P. v. David M.*, 21 N.Y.S.3d 622 (N.Y. App. Div. 2015) (finding insufficient

allegations for harassment where an individual "stared at [a woman] in a way that made her feel

scared and intimidated . . . [and] came to a store where she was, walked up to within two feet of

her and called her a derogatory name."). These threats must be more than a "crude outburst" or

bravado. *People v. Dietze*, 549 N.E.2d 1166, 1169–70 (N.Y. 1989) (reversing a harassment

charge where "[t]here is nothing in the record demonstrating that defendant's statement that she

would 'beat the crap out of [complainant] some day or night in the street' was either serious,

should reasonably have been taken to be serious, or was confirmed by other words or acts

showing that it was anything more than a crude outburst"); *People v. Marom*, 114 N.Y.S.3d 812

(N.Y. App. Div. 2019).

Defendants claim that Lolja had probable cause to arrest Plaintiff for harassment based

on the Complainants' statements that Plaintiff had threatened them and they were afraid. Def.

Mem. at 8. As with menacing, there is an initial question of whether the Complainants'

statements, without more, would be sufficient proof for a charge of harassment. Though the

Complainants said that they felt threatened and feared for their safety, if those emotions were

triggered solely by Plaintiff's verbal outburst, without any evidence of an actual threat of

physical violence, Plaintiff's statements are insufficient to support probable cause for a

harassment charge. *Cf. Marom*, 114 N.Y.S.3d at 812 (holding defendant's statement of "I will

kill you," without more evidence of a "clear and present danger," insufficient to justify a charge

of harassment); *Canjura*, 2 N.Y.S.3d at 727 (holding a verbal threat of "in substance F . . . you,

I'll f . . . you up . . . , standing alone, was not sufficient to show the physical contact element of harassment in the second degree").

Like the menacing charge, there is the question of whether it was reasonable for Lolja to rely on the Complainants' statements: material facts in dispute underly that reliance.  Should Plaintiff prove his version of the facts at trial, a jury may conclude that a reasonable officer would not have relied on the Complainants' statements.  The Court, therefore, cannot find that, as a matter of law, there was probable cause to arrest Plaintiff for harassment.

Accordingly, Defendants' motion for summary judgment on the false arrest claim is DENIED.

IV.   <u>Malicious Prosecution</u>

Plaintiff brings claims of malicious prosecution under state and federal law, and Defendants move for summary judgment on both.  The elements of state and federal claims of malicious prosecution are: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation and internal quotation marks omitted).  Defendants argue that Plaintiff has failed to establish the first, second, and third elements.  Def. Mem. at 9–14.  The Court concludes that Plaintiff's federal claim fails due to his failure to establish favorable termination, but Plaintiff may proceed on his state claim.

A.   Initiation

The Second Circuit has held that "[i]nitiation in [the context of malicious prosecution] is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Rohman v. New York City Transit Auth.*,

215 F.3d 208, 217 (2d Cir. 2000) (quotation marks and citation omitted).  Defendants argue that Lolja did not initiate the charges against Plaintiff, because it was the District Attorney, and not Lolja, who ultimately decided on the charges.  Def. Mem. at 11–12.

"[T]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  In the case of police officers, however, that presumption is overcome "where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Cambisaca v. Ruhe*, No. 17 Civ. 87, 2019 WL 2866072, at *6 (S.D.N.Y. July 3, 2019) (quoting *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457–58 (S.D.N.Y. 2009); *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("[P]olice officers can 'initiate' prosecution by filing charges or other accusatory instruments.").

Here, Lolja signed the criminal complaint against Plaintiff, using information Lolja allegedly observed.  ECF No. 77-8.  Courts have found signing a criminal complaint based on the officer's own knowledge sufficient to conclude that a police officer defendant initiated the proceedings.  *Cameron*, 598 F.3d at 63 ("As a matter of law, [the police officers] filing of the Criminal Court Complaint "initiated" the prosecution against [the plaintiff].");  *McKenzie v. City of New York*, No. 17 Civ. 4899, 2019 WL 3288267, at *14 (S.D.N.Y. July 22, 2019);  *cf. Brown v. City of New York*, No. 12 Civ. 3146, 2014 WL 5089748, at *7 (S.D.N.Y. Sept. 30, 2014) (concluding the officer did not initiate a prosecution where he signed a criminal information but "the information regarding Plaintiff's alleged activities was obtained from the two complaining

victims"). Lolja also had Plaintiff arraigned on the charges in the criminal complaint. 56.1 Stmt. ¶ 36.

Moreover, the criminal complaint signed by Lolja alleges that he "observed [Plaintiff's] car was partially blocking vehicular traffic and blocking another vehicle from accessing a parking space." ECF No. 77-8. If Plaintiff's story is credited, this constitutes false information, which was "created . . . and forwarded . . . to the prosecutor[]." *Cambisaca*, 2019 WL 2866072, at *6.

Accordingly, a reasonable jury could find that Lolja initiated the charges against Plaintiff. *See Marshall v. Port Auth. of New York & New Jersey*, No. 19 Civ. 2168, 2020 WL 5633155, at *6 (S.D.N.Y. Sept. 21, 2020).

B.     Favorable Termination

Federal and state standards differ on what a plaintiff must show to prove a favorable termination. For a federal malicious prosecution claim to have terminated favorably to the plaintiff, the plaintiff must show that "the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018). It cannot "le[ave] the question of question of guilt or innocence unanswered." *Id.* at 28. However, "neither an acquittal nor a finding of actual innocence by clear and convincing evidence is necessary." *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 71–72 (S.D.N.Y. 2020). Rather, "termination must be measured in objective terms by examining the totality of the circumstances." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff's case was terminated on March 6, 2017, when it was "dismissed and sealed," with the sealing done "pursuant to Section 160.50 of the CPL." Rule 56.1 Stmt. ¶ 40; Certificate of Disposition. No further admissible evidence explains the reason for the dismissal.

17

Though a dismissal does not foreclose a finding of favorable termination under federal law, it does not *per se* demonstrate favorable termination.  For instance, the Second Circuit differentiated between a dismissal where the prosecutor determined that he could not prove the charges beyond a reasonable doubt, which is sufficient for a malicious prosecution claim, and a dismissal where the prosecutor dismissed "in the interest of judicial economy," which is not. *Olaizola v. Foley*, 797 F. App'x 623, 625 (2d Cir. 2020).  A plaintiff must give a specific reason for the dismissal that affirmatively demonstrates his innocence.  *Thompson v. Clark*, 794 F. App'x 140, 141–42 (2d Cir. 2020) (holding a termination was insufficient where neither the court nor the prosecutor offered reasons for the dismissal and the district court had found "substantial" evidence the case had been dismissed for reasons other than the merits); *see also Foy v. City of New York*, No. 7 Civ. 406, 2019 WL 3717317, at *7 (E.D.N.Y. Aug. 7, 2019) (finding insufficient a termination where the plaintiff did not know why her charges were dismissed).

Section 160.50 mandates a criminal case be terminated and sealed when it is dismissed for certain enumerated reasons.  N.Y. Crim. Proc. Law § 160.50.  Federal courts have rejected the contention that sealing under § 160.50 affirmatively indicates a plaintiff's innocence.  *See Falls v. Rivera*, No. 19 Civ. 3525, 2019 WL 5260720, at *2 (S.D.N.Y. Oct. 15, 2019). Moreover, § 160.50 allows for termination and sealing based on dismissal on grounds that do not affirmatively indicate innocence, such as jurisdiction.  N.Y. Crim. Proc. Law § 160.50(3)(b). Without other evidence explaining why Plaintiff's case was dismissed, therefore, the totality of the circumstances does not indicate that the termination under § 160.50 affirmatively indicates Plaintiff's innocence; accordingly, Plaintiff's federal malicious prosecution claim fails.

18

Under New York state law, however, the standard for favorable termination is lower: "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 754 N.E.2d 164, 167 (N.Y. 2001). A voluntary dismissal without prejudice qualifies as a favorable termination where it indicates "formal abandonment of the proceedings." *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000).

Plaintiff's criminal case was dismissed on March 6, 2017. It concerned acts Plaintiff allegedly committed on December 11, 2016. There is a one-year statute of limitations for disorderly conduct—the charge on which he was arraigned. N.Y. Crim. Proc. Law § 30.10(2)(d). By the time Plaintiff's filed his complaint in this action on May 23, 2018, it was clear that the March 6, 2017 dismissal of the criminal case constituted a formal abandonment of the charges and they could not be reinstated.

Courts have split, however, on whether a showing of termination and sealing under § 160.50 is sufficient for a plaintiff to carry his burden of demonstrating favorable termination under New York state law. *Compare Stevens v. City of New York*, No. 10 Civ. 2172, 2012 WL 3000677, at *5 (S.D.N.Y. July 17, 2012), *on reconsideration in part*, No. 10 Civ. 2172, 2012 WL 5862659 (S.D.N.Y. Nov. 14, 2012) ("[T]here is also no dispute that the criminal proceeding . . . terminated in plaintiff's favor: the Bronx County District Attorney dismissed all criminal charges against plaintiff on June 30, 2010, and the trial court sealed plaintiff's case pursuant to Section 160.50 of the CPL" (internal quotation marks and citations omitted))*, and Rohrs v. Rohrs*, 793 N.Y.S.2d 532, 534 (N.Y. App. Div. 2005) ("The dismissal of the pending charges against the plaintiff in this case pursuant to CPL 160.50 constituted a favorable termination as a

matter of law."), *with Nicaj v. City of New York*, 282 F. Supp. 3d 708, 715 (S.D.N.Y. 2017)

("Proof that the case was dismissed [based on a certificate of disposition indicating sealing under

§ 160.50], without establishing the basis on which it was dismissed, is insufficient to establish

that the case was terminated in favor of the accused"), *and Dubrovsky v. Zaicher*, 906 N.Y.S.2d

779 (N.Y. App. Div. 2009) ("[T]he fact that a CPL 160.50 order was issued does not

conclusively establish that the termination was in plaintiff's favor as such an order can issue for

reasons that are not inherently consistent with the innocence of the accused"); *cf. Fate v.

Charle*s, 24 F. Supp. 3d 337, 342–43 (S.D.N.Y. 2014) (holding there was no favorable

termination where the certificate of disposition did not indicate termination and sealing pursuant

to § 160.50).

     This Court chooses to follow *Stevens* and holds that a termination and sealing pursuant to

§ 160.50, with no evidence indicating a dismissal inconsistent with innocence, constitutes

favorable termination under state law.

     Initially, both *Nicaj* and *Fate* apply a since-overruled higher standard for favorable

termination.  The courts in both cases, as well as Defendants, cite *Russo v. State of N.Y.*, 672

F.2d 1014 (2d Cir. 1982), *decision modified on reh'g sub nom. Russo v. State of New York*, 721

F.2d 410 (2d Cir. 1983), for the proposition that Plaintiff must affirmatively demonstrate

evidence of the circumstances under which the criminal proceeding was terminated.  *Fate*, 24 F.

Supp. 3d at 342; *Nicaj*, 282 F. Supp. 3d at 715 (citing *Fate*, 24 F. Supp. 3d at 342–3); Def. Mem.

at 14; Def. Reply at 7, ECF No. 84.  The Second Circuit in *Russo*, however, was discussing the

requirements of the older state rule requiring the plaintiff to demonstrate that a dismissal

"impl(ies) a lack of reasonable grounds for the prosecution."  *Russo*, 672 F.2d at 1019 (quoting

*Loeb v. Teitelbaum*, 432 N.Y.S.2d 487, 494 (N.Y. App. Div. 1980) (alteration in original)).  As

Judge Rosenblatt made clear in his concurrence, the New York Court of Appeals overruled that test in favor of the lower "not inconsistent with innocence" standard in *Smith-Hunter*. *Smith-Hunter*, 734 N.E.2d at 756–57 (Rosenblatt, J., concurring); *see Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) ("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Rather, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence."). The Second Circuit has not spoken to the evidentiary requirements of the current standard.

The Court thus turns to the language of the statute. Section 160.50's title indicates it is an "[o]rder upon termination of criminal action in favor of the accused." N.Y. Crim. Proc. Law § 160.50. Although it allows for dismissal for reasons other than innocence, it also allows for termination due to dismissal for many reasons that either indicate innocence or do not indicate a lack of innocence, and thus a termination and sealing under § 160.50 is not inherently inconsistent with innocence. *Id.*; *Cantalino*, 754 N.E.2d at 167 (requiring the termination be "not inconsistent" with innocence, rather than consistent with innocence).

Moreover, the New York Court of Appeals in *Smith-Hunter* indicated that, as a matter of course, any final termination of a criminal proceeding "end[ing] in failure" constitutes favorable termination for a malicious prosecution claim. *Smith-Hunter*, 734 N.E.2d at 753. A termination inconsistent with innocence is the exception to that general rule. *Id.* Therefore, evidence of a dismissal inconsistent with innocence gives rise to the exception to the final termination rule; a lack of evidence of the reason for termination does not disturb the general rule.

The Court of Appeals also expressed concern that raising the standard for favorable termination would require criminal defendants to continue a case, thus "incurring additional

financial and emotional costs[,] as a prerequisite to recovery for malicious prosecution." *Id.* at

755.  Following the Court of Appeals' reasoning, requiring plaintiffs to demonstrate more than

termination and sealing under § 160.50 could foreclose a claim to too many potential litigants.

Plaintiff's situation is not uncommon: the sole admissible evidence available regarding the

dismissal of his case is the certificate of disposition, which does not offer an explanation of the

dismissal.  Certificate of Disposition; *see, e.g.*, *Fate*, 24 F. Supp. 3d at 342–43; *Stevens*, 10 Civ.

2172, ECF No. 34 ¶ 66.  If the dismissal of a plaintiff's case was not on the record or the district

attorney who prosecuted the case is unable to testify, then a malicious prosecution plaintiff may

not have access to any other evidence.  For instance, a plaintiff may only know of the reason for

dismissal because they were informed of it by a lawyer or the district attorney, statements which

amount to inadmissible hearsay.  Requiring more than a notice of termination and sealing under

§ 160.50 would allow a defendant who is maliciously prosecuting an individual to bring

wrongful charges, creating both emotional and financial costs for the individual, and then

dismiss the case in favor of the plaintiff and fully complete the certificate of disposition, but still

be protected from a malicious prosecution suit due to a lack of evidence regarding why the case

was dismissed.

Although a plaintiff seeking to prove a malicious prosecution claim has a "heavy

burden," *Smith-Harvey*, 734 N.E.2d at 752, it cannot be foreclosed merely because the state

certificate of disposition form does not offer a reason for the dismissal of the criminal action.

The Court concludes, therefore, that evidence of a dismissal, termination, and sealing pursuant to

§ 160.50, without evidence indicating a dismissal for a reason inconsistent with innocence,

constitutes a favorable termination under state law.  Thus, the Court holds that Plaintiff's

criminal case was favorably terminated and Plaintiff may pursue his state malicious prosecution claim.

### C.     Lack of Probable Cause and Malice

The final two elements of a malicious prosecution claim are a lack of probable cause and malice.  Where there is an issue of material fact as to probable cause, "the element of malice also becomes an issue of material fact as well," because "[a] lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).  The Court has concluded that there is an issue of material fact regarding probable cause, *see supra* § III.A., and thus there is similarly an issue of material fact regarding malice.

Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's federal malicious prosecution claim, and DENIED as to Plaintiff's state malicious prosecution claim.

### V.     Immunity

Defendants raise two issues of immunity: qualified immunity regarding the federal claims against Lolja, and governmental immunity regarding the state claims against Defendants Lolja and the City.  Def. Mem. at 17–20, 22–23.  Qualified immunity shields public officials performing discretionary functions from federal civil liability to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights. *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994).  A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause. *Zellner v.*

23

*Summerlin*, 494 F.3d 344, 369–370 (2d Cir. 2007). The Second Circuit has defined this standard,

referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same
> circumstances and possessing the same knowledge as the officer in question could have
> reasonably believed that probable cause existed in light of well established law . . . [I]t is
> inevitable that law enforcement officials will in some cases reasonably but mistakenly
> conclude that probable cause is present, and we have indicated that in such cases those
> officials—like other officials who act in ways they reasonably believe to be lawful—
> should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks, alteration,

and citations omitted).  Thus, "[t]he qualified immunity standard gives ample room for mistaken

judgments by protecting all but the plainly incompetent or those who knowingly violate the law."

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).

"[T]he ultimate legal determination of whether qualified immunity attaches to a law enforcement

agent's actions is a question of law better left for the court to decide."  *Stephenson v. Doe*, 332

F.3d 68, 81 (2d Cir. 2003) (internal quotation marks omitted).

Defendants claim arguable probable cause based on the same facts they use to argue

probable cause for Plaintiff's arrest for his false arrest and malicious prosecution claims.  But as

discussed *supra* § III, there are factual disputes regarding the underlying events, including what

the circumstances confronting Lolja were, whether it was reasonable for Lolja to rely on the

Complainants' statements, and whether the Complainants' statements and other circumstances

were sufficient to give rise to probable cause for Plaintiff's arrest.  The Second Circuit has

cautioned that on summary judgment, courts should evaluate the objective reasonableness of the

officers' behavior only when the factual record of the circumstances confronting the officers is

not in serious dispute.  *See Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).  Here, the facts

that confronted Lolja are contested by the parties, and the Court cannot determine that "the *only*

*conclusion* a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti*, 124 F.3d at 128 (quoting *Lennon*, 66 F.3d at 421) (emphasis added).  Summary judgment is, therefore, inappropriate at this stage.

Summary judgment based on governmental immunity is similarly inappropriate.[4]  Under state law, governmental, or good-faith, immunity provides the city or governmental official "with immunity from suit for those government actions requiring expert judgment or the exercise of discretion . . . when the action involves the conscious exercise of a judicial or quasi-judicial nature." *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 460 n.12 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  With respect to police officers, however, that immunity "is a qualified immunity because they are not protected for unreasonable actions or those made in bad faith." *Id.*  For actions taken by police officers, therefore, the test for qualified immunity under federal law and governmental immunity under state law is the same: whether the police officer acted reasonably in determining there was probable cause for an arrest.  *Cabrera v. City of New York*, No. 16 Civ. 1098, 2017 WL 6040011, at *6 (S.D.N.Y. Dec. 4, 2017).  Because there are sufficient facts in dispute to prevent the Court from determining if Lolja is entitled to qualified immunity as a matter of law, the Court cannot determine if the Defendants are entitled to governmental immunity.  *See Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007) ("If the [] defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on Jenkins' state law false arrest claim.").

---

[4] Defendants contend that Plaintiff failed to dispute Defendants' arguments on governmental immunity, and thus have conceded the argument.  Def. Reply at 9.  Though not labelling the section as disputing governmental immunity, however, Plaintiff does address the claim for governmental immunity by contesting whether the arrest was discretionary or ministerial.  Pl. Opp'n at 14.  Though the Court decides the governmental immunity issue on other grounds, this argument is sufficient to determine that Plaintiff does not concede the point.

VI.     <u>Abandoned Claims</u>

Defendants also move for summary judgment on Plaintiff's § 1983 claim of excessive force, and all claims against the Doe Defendants.  In their opening brief, Defendants argue that the excessive force claim should be dismissed because the force used was *de minimis*, Def. Mem. at 15–17, and for the dismissal of the claims against the Doe Defendants because Plaintiff has failed to name or serve them, *id*. at 4.  Plaintiff has not responded to these arguments, or even mentioned either claim in his opposition.  *See generally* Pl. Opp'n.

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *see also Jackson v. Fed. Exp*., 766 F.3d 189, 196 (2d Cir. 2014) (affirming the district court's finding of abandonment where plaintiff fully responded to defendant's proposed undisputed facts and the opposition brief argued against grant of summary judgment only as to one claim).  Because Plaintiff has not addressed the excessive force claim or claims against the Doe Defendants in his response brief, but did oppose summary judgment on the other claims, Defendants' motion for summary judgment on Plaintiff's claims of excessive force and against the Doe Defendants is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, the motion is GRANTED as to Plaintiff's state false arrest claim, § 1983 malicious prosecution and excessive force claims, and claims against the Doe Defendants.  Plaintiff's § 1983 false arrest claim and state malicious prosecution claim remain for trial.

The Clerk of Court is directed to terminate the motion at ECF No. 75.

SO ORDERED.

Dated: March 11, 2021
       New York, New York

_____
          ANALISA TORRES
     United States District Judge